## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-476 (APM)** |
| **SHANE JASON WOODS,** | |
| **Defendant.** | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING BRIEF

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplemental sentencing brief in response to the Court's question concerning whether U.S.S.G. §§ 2A2.2 (aggravated assault) or 2A2.4 (obstructing or impeding officers) is the appropriate base offense level for the defendant's conviction on Count 3, the violation of 18 U.S.C. § 111(a). *See* 9/18/23 Minute Order. For the reasons explained below, the answer is U.S.S.G. § 2A2.2, just as the parties agreed in the plea agreement, just as Probation recommends, and just as nine other judges in this district concluded when analyzing the same question.

### I.      BACKGROUND

Woods pleaded guilty via plea agreement to striking, beating, or wounding within the territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(4) (Count 2) and assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1) (Count 3) during the riot at the United States Capitol on January 6, 2021. PSR ¶¶ 10, 18-30. The government agreed to dismiss the remaining counts in the indictment, which included a charge of civil disorder in violation of 18 U.S.C. § 231(a)(3) (Count 1). *Id.* ¶¶ 7, 15.

With respect to Count 3, Woods admitted—via the Statement of Facts agreed upon by the

1

parties in support of the plea agreement, *see* ECF No. 37—that he assaulted U.S. Capitol Police ("USCP") Officer J.F.; that at the time he did so, a civil disorder was occurring on Capitol grounds; that Officer J.F. was engaged in her official duties in response to that civil disorder; that Woods assaulted her with the intent to obstruct, impede, or interfere with her performance of those official duties; and that his assault did in fact so obstruct, impede, or interfere with her, *see id.*; *see also* PSR ¶¶ 18-25; Govt. Sentencing Exhibit ("GEX") 3. Crucially, Woods thus admits that his intent was both to harm Officer J.F. and to obstruct, impede, or interfere with her efforts to police the riot, specifically by arresting the rioter who sprayed her with a chemical irritant at point blank range. *See id.*; *see also* ECF No. 37.

The Sentencing Guidelines direct a sentencing court to determine the applicable Guideline based on "the offense conduct charged in the count of conviction." U.S.S.G. § 1B1.2(a). The Statutory Index ("Appendix A") to the Sentencing Guidelines identifies the applicable Guideline or Guidelines for each charged statute, and it directs sentencing courts to apply either U.S.S.G. §§ 2A2.2 or 2A2.4 for violations of 18 U.S.C. § 111(a)(1). Section 2A2.4(c) instructs that § 2A2.2 be applied "[i]f the conduct constituted aggravated assault." In that phrase, "conduct" refers to all relevant conduct, not simply the conduct underlying the crimes for which Sargent was convicted. *See United States v. Valdez-Torres*, 108 F.3d 385, 387–88 (D.C. Cir. 1997). Section 2A2.2 defines "aggravated assault" as, *inter alia,* "a felonious assault that involved . . . (D) an intent to commit another felony." U.S.S.G. §2A2.2 cmt. n.1.

The parties, *see* PSR ¶ 11, and Probation, *see id.* ¶ 40, all agree that the appropriate Guideline base offense level for Count 3 is U.S.S.G. § 2A2.2, on the grounds that Woods' assault on Officer J.F. qualifies as an "aggravated assault" because he committed it with "an intent to

commit another felony," U.S.S.G. § 2A2.2, n.1. Here, that "other felony" is 18 U.S.C. § 231(a)(3) (civil disorder), which was charged as Count 1.

## II.   ARGUMENT

### A.   Assault under § 111(a)(1) and civil disorder under § 231(a)(3) are different crimes with different elements and different intents, which addresses circularity and/or bootstrapping concerns.

At sentencing, the Court expressed concern about whether a violation of § 231(a)(3) could properly serve as the "other felony" elevating an assault on a federal officer that would otherwise fall under § 2A2.4 to an aggravated assault scored under § 2A2.2. Although the Court did not say so explicitly, the Court's question appeared to be grounded in a perception that the underlying criminal conduct—the assault on officer J.F.—was identical for both felonies, and thus using a violation of § 231(a)(3) to reach a higher guideline base offense level for a violation of § 111(a)(1) seemed circular or like improper bootstrapping. But there is no circularity. Even if the *actus reus* for the two crimes were the same, the *mens rea*—the intent—is not. The distinction is crucial.

A felony conviction under § 111(a)(1) requires proof that the defendant intentionally assaulted, resisted, opposed, impeded, intimidated, or interfered with a federal officer engaged in his or her official duties. *See id.* But that is the limit of § 111(a)(1)'s *mens rea* requirement. The statute is broad; a defendant can violate § 111(a)(1) by striking any federal officer, in any situation, for any purpose, including for no purpose at all. By contrast, a violation of § 231(a)(3) requires a specific situation to be present (an ongoing civil disorder), a particular type of federal officer victim (one engaged in official duties in response to that civil disorder), and a specific intent behind the defendant's use of unlawful force (obstructing, impeding, or interfering *with the officer's efforts to deal with the civil disorder*). A random act of violence against a federal police officer who is

3

just walking down the street violates § 111(a)(1) but not § 231(a)(3).

This distinction is critical, and the Guidelines properly account for it by elevating an assault against a federal officer that would otherwise fall under § 2A2.4 to an aggravated assault scored under § 2A2.2 if it was committed for a felonious *purpose beyond the assault itself*, such as to impede that same federal officer from responding to a civil disorder.[1] Indeed, distinguishing crimes—even those involving the same *conduct*—based on the intent behind that conduct is commonplace in our legal system. For example, although both involuntary manslaughter and premeditated murder are unlawful homicides resulting in the loss of a human life, premeditated murder involves the *intent* to kill while involuntary manslaughter does not. Accordingly, federal criminal law and the law of every state punishes premediated murder more harshly than involuntary manslaughter, not because the defendant's conduct resulted in someone's death, but because of the defendant's *intent* to cause that result. *Compare* 18 U.S.C. § 1111(b) (mandatory penalty for first degree murder is death or imprisonment for life) *with* 18 U.S.C. § 1112(b) (maximum prison sentence for involuntary manslaughter is 8 years). The same distinction can be found among January 6 defendants. For example, judges sentencing defendants for similar conduct within the Capitol building have distinguished those who intended to impede Congress *generally* from those who demonstrated a specific and corrupt intent to stop the certification *particularly*. Similarly, for defendants convicted of § 111(a)(1), sentencing judges have distinguished between those who intended to resist officers versus those who intended to harm them. In both of these

---

[1] The Guidelines also elevate assaults against federal officers to aggravated assaults when they involve "(A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; [or] (C) strangling, suffocating, or attempting to strangle or suffocate . . . ." U.S.S.G. § 2A2.2, n.1.

4

scenarios, judges can, should, and do punish the latter offenders more severely. This is neither arbitrary nor inconsistent. Intent matters enormously.[2]

Here, evidence exists beyond a preponderance—indeed, Woods admitted—that Woods assaulted Officer J.F. with the intent not just to harm her, but specifically "with the intent to obstruct, impede, or interfere with her performance of [her] official duties" in response to the riot. PSR ¶ 28. Woods well understood the circumstances of his conduct. He saw the mob surrounding the police officers. He saw Officer J.F. chasing after the rioter who had assaulted her by spraying her point blank in the face with a chemical irritant. *Id.* ¶ 27. And Woods rammed into Officer J.F. with the specific intent to not just harm her, but to stop her from apprehending that rioter. The Guidelines regard that specific intent—to not just randomly assault Officer J.F., but to do so for

---

[2] Recently, Judge McFadden addressed the importance of intent at sentencing in *United States v. Hatchet Speed*, 1:22-cr-244. There, Judge McFadden stated that Speed did not engage in acts of violence or destruction, and that "his conduct was frankly comparable to defendants who the Government has only charged with misdemeanors." (Sent. Tr. at 19). Nevertheless, Judge McFadden imposed a four-year prison sentence and made clear that the sentence was warranted by the defendant's intent to obstruct the certification process, telling Speed:

> [Y]our actions, standing alone, were not particularly egregious. You weren't involved in any violence. You didn't destroy anything and you didn't enter sensitive areas of the building. I agree with your attorney's arguments on this point. *However, your intentions were quite troubling*. It is clear from the evidence the Government introduced at trial that you're an intelligent man with a nuanced understanding of the certification process. You were quite happy to stay outside as long as things were going your way. *But when you thought the vice president was betraying you, you were also very willing to break in. And you made it clear that you only left because you thought you had achieved your purpose.*

*Id.* at 35 (emphasis added). While Woods' case does not involve a charge that he intentionally obstructed the certification process, in violation of 18 U.S.C. § 1512(c)(2), Judge McFaddden's analysis in *Speed* is nevertheless instructive in articulating how important it is for the Court to factor the defendant's intent—not just his conduct—into its determination of the appropriate sentence.

the felonious purpose of undermining her response to the civil disorder—as elevating Woods'
conduct from a basic assault, scored under U.S.S.G. § 2A2.4, to an aggravated assault, scored
under U.S.S.G. § 2A2.2. This is just. While all those who harmed officers on January 6 deserve
punishment, those who assaulted officers as part of the larger goal of furthering the riot deserve
greater punishment.

    **B.**    **It appears that every other judge in this district who has analyzed this
Guidelines issue has reached the same conclusion as the parties and
Probation.**

According to the government's internal case tracking efforts, to date there have been *at
least* 14 cases where January 6th defendants have been sentenced after pleading guilty via plea
agreement to a violation of 18 U.S.C. § 111(a)(1) where the assault did not involve a weapon or
serious bodily injury and where no other felonies were charged other than 18 U.S.C. § 231(a)(3).[3]
Those 14 cases serve as instructive comparators for this case. In all of them, the sentencing court
concurred—explicitly or implicitly—with the parties' agreement (and in most such cases,
Probation's assessment) that § 231(a)(3) (civil disorder) *can* properly serve as the "other felony"
motivating an assault and thus qualifying a violation of § 111(a)(1) as an "aggravated assault"
under U.S.S.G. § 2A2.2. *See, e.g.*, *United States v. Sargent,* Case No. 1:21-cr-258 (TFH); *United
States v. Creek*, Case No. 1:21-cr-645 (DLF); *United States v. Council*, Case No. 1:21-cr-207
(TNM); *United States v. Leffingwell*, Case No. 1:21-cr-5 (ABJ); *United States v. Dickinson*, Case
No. 1:21-cr-649 (JDB); *United States v. Shively*, Case No. 1:21-cr-151 (CKK); *United States v.
Owens*, Case No. 1:21-cr-286 (BAH); *United States v. Eckerman*, Case No. 1:21-cr-623 (CRC);

---

[3] There may be more. The government's internal case tracking database may not contain perfect
information for all January 6th case entries.

*United States v. Clayton*, Case No. 1:22-cr-139 (RCL). In similar cases that went to trial, every sentencing court reached the same conclusion. *See, e.g.*, *United States v. Dennis*, Case No. 1:21-cr-679 (JEB); *United States v. Gillespie*, 1:22-cr-60 (BAH); *United States v. Pollack, et al.*, Case No. 1:21-cr-447 (CJN).

In an analogous situation in *Creek*, Judge Friedrich applied U.S.S.G. § 2A2.2 to calculate the base offense level for a violation of 18 U.SC. § 111(a)(1) on the theory that Creek's assaults against two retreating police officers were intended to further the civil disorder, in violation of 18 U.SC. § 231(a)(3). Like Woods, Creek pleaded guilty via plea agreement and agreed that U.S.S.G. § 2A2.2 applied. Although Probation disagreed and applied U.S.S.G. § 2A2.4, Judge Friedrich concluded that the parties were right. In explaining her ruling, Judge Friedrich defeated circularity concerns by noting "Section 231 is a different felony than Section 111(a) and has distinct elements." *Creek*, Sen. Tr. at 10-11.

Last month in *United States v. Sandoval*, 1:21-cr-195 (CKK), Judge Kollar-Kotely explicated this issue in a Memorandum Opinion and Order. *See id.*, ECF No. 143. After a bench trial, Judge Hogan convicted defendant Sandoval of twelve offenses, including six felonies: four violations of 18 U.S.C. § 111(a)(1) and one count each of 18 U.S.C. §§ 231(a)(3) and 1512(c)(2).[4] Probation and the government applied U.S.S.G. § 2A2.2 as the base offense level for Sandoval's assaults. In contrast, Sandoval argued that U.S.S.G. § 2A2.4 should control. After pre-sentencing

---

[4] Given that *Sandoval* resolved via a bench trial—not a plea deal that contained an agreed-upon Guidelines calculation—and included a violation of 18 U.S.C. § 1512(c)(2), the government acknowledges that *Sandoval* is not on all fours with this case. Nevertheless, Judge Kollar-Kotely's memorandum opinion explicitly and extensively discusses whether a violation of 18 U.S.C. § 111(a)(1) that did not involve a weapon or serious bodily injury can nevertheless qualify as an "aggravated assault" under U.S.S.G. § 2A2.2 if it was committed with the intent to further a violation of 18 U.S.C. § 231(a)(3).

briefing on the issue, Judge Kollar-Kotely agreed with Probation and the government (not to mention the nine other district court judges cited above) and applied U.S.S.G. § 2A2.2, finding that Sandoval committed his assaults to further *both* §§ 231(a)(3) and 1512(c)(2) and that either sufficed to render his § 111(a)(1) violations "aggravated assaults" under U.S.S.G. § 2A2.2. *Id.* at 8.

In so ruling, Judge Kollar-Kotely distinguished as inapposite Judge Jackson's ruling in *United States v. Hamner*, Case No. 1:21-cr-689 (ABJ). *See id.* at 4. Hamner was convicted of a single count of 18 U.S.C. § 231(a)(3), while an additional charge of assaulting police in violation of 18 U.S.C. § 111(b) and a second charge of civil disorder in violation of 18 U.S.C. § 231(a)(3) remained pending. *See* Judgment and Conviction, *Hamner*, ECF No. 36. Accordingly, in *Hamner*, Judge Jackson addressed the proper guideline for a violation of § 231(a)(3), not the situation presented here: whether a violation of § 111(a) would be an "aggravated assault" if it was committed with the intent to commit a civil disorder in violation of § 231(a)(3).

Moreover, Judge Jackson herself applied U.S.S.G. § 2A2.2 to an assault that was performed with the intent to commit a violation of § 231(a)(3) when she was presented with that scenario in *Leffingwell*. Like Woods here, Leffingwell pleaded guilty to a violation of § 111(a)(1) and his conduct, as established by the agreed-upon Statement of Offense, showed that he committed that assault in furtherance of the civil disorder. *See Leffingwell*, ECF No. 26. Additionally, just like this case, the parties agreed in *Leffingwell*, as memorialized in the plea agreement, that U.S.S.G. § 2A2.2 established the base offense level. *Id.,* ECF No. 25. Judge Jackson announced that she would defer to the parties' plea agreement, and she applied U.S.S.G. § 2A2.2 against Leffingwell. The Court should do the same here.

8

### III.     CONCLUSION

For the reasons set forth above, the Court should follow the agreement of the parties and the recommendation of Probation, as well as the practice of the other sentencing courts in this district, and apply U.S.S.G. § 2A2.2 to Count 3.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:          */s/ Michael M. Gordon*
MICHAEL M. GORDON
Senior Trial Counsel, Capitol Siege Section
Assistant United States Attorney, Detailee
Florida Bar No. 1026025
601 D St., NW
Washington, D.C. 20530
Telephone: (813) 274-6370
michael.gordon3@usdoj.gov

s/ *Brian D. Brady*
Brian D. Brady
Trial Attorney, Detailee
D.C. Bar No. 1674360
601 D St., NW
Washington, D.C. 20530
Telephone: (202) 834-1916
Brian.Brady@usdoj.gov